St. Louis, Iron Mountain & Southern Railway Company *v.* State *use* Boone County.

Opinion delivered December 7, 1908.

Railroads—duty to construct crossing.—Under Kirby's Digest, § 6681 *et seq.,* requiring railroad companies to construct highway crossings whenever their roads cross a public highway, it is contemplated that a crossing shall be constructed whenever a railroad track is laid at the crossing and ready for trains to pass over.

Appeal from Boone Circuit Court; *Brice B. Hudgins,* Judge; affirmed.

*T. M. Mehaffy, J. E. Williams,* and *Horton & South,* for appellant.

The statute under which this action is prosecuted is highly penal, and should therefore be strictly construed. Kirby's Digest,

§ § 6681 to 6684 incl.; 40 Ark. 97; 1 Conn. 502; 38 Ark. 519; 43 Ark. 413; 53 Ark. 336; 56 Ark. 45-47; 59 Ark. 344. Statutes *in pari materia* are to be construed together as one statute, each a part of the other. 40 Ark. 452; 4 Ark. 410. Section 2941, Kirby's Digest, therefore should be read and construed with these sections. It gives the railroad company the right to build across a public road, and provides that *after* it has done so it shall restore the road or highway to its former state, as nearly as may be. If it can not be restored to its former state, then by section 6681 the company must make a crossing, or, if necessary, a bridge or overhead crossing—the other sections providing the procedure on the part of the public and the remedy. Where statutes declare the rights of parties and prescribe the remedy, the remedy thus provided is exclusive, and must be strictly pursued. 59 Ark. 356; 71 Ark. 235 and authorities cited. The notice required by section 6682 is the foundation of the action. There is no such person or corporation as the "St. Louis, Iron Mountain & Southern Railway," and a notice addressed in that form is a fatal variance. 69 Ark. 363; 68 Ark. 241; 66 Ark. 120; 58 Ark. 248. In any case the alleged notice was premature, having been given at a time when appellant was in good faith prosecuting its work, and had not completed same at the place in controversy; and the notice is further insufficient as a basis of action because not filed with the county clerk at the expiration of the time allowed by statute. Kirby's Digest, § 6683.

*Wm. F. Kirby*, Attorney General, *Crump, Mitchell & Trimble* and *Frank Pace*, for appellee.

The act relied on by appellant, Kirby's Digest, § 2941, to sustain its contention that it could not "be compelled to restore the highway to a state of usefulness until after it had built its railroad across the same," nowhere gives power to a railroad corporation to take charge of and destroy the public's right of passage over a public highway until after it had built across the same. On the contrary, it is the law that when a railroad company crosses a public highway, it must restore the highway as nearly as may be to its original state of usefulness, and that without unreasonable and unnecessary delay. 20 L. R. A. 165; 37 W. Va. 97; 58 N. Y. 165; Elliott on Roads & Streets, § 779; 75

Am. Dec. 778; Redfield on Railways, 515-518. The notice was sufficient under the statute. Kirby's Digest, § 6622. It was served on an agent of the appellant near the place where the crossing was to be constructed; described a highway that is crossed by appellant's railroad, and there is no other railroad in that country. It is immaterial that the word "company" was omitted from the address in the notice. The object of filing the notice in the county clerk's office is to call attention of the prosecuting attorney to the matter, and not as constructive notice to the company, because it has previously had actual notice. Here the notice was filed September 28, 1907—a sufficient compliance with the statute. Kirby's Digest, § 6683.

BATTLE, J. The State of Arkansas for the use of Boone County brought an action against the St. Louis, Iron Mountain & Southern Railway Company. After alleging that the defendant owned a line of railroad through Boone County, in this State, it alleged in its complaint as follows: "That the defendant, in constructing its said line through Boone County, constructed the same across that certain public road leading from Harrison to Lead Hill and known as the old Harrison and Lead Hill road on what is known as Oregon Flat, in road district No. 7, Boone County, Arkansas, the point where the said railroad crosses the said public road being on the southwest quarter of the northeast quarter of section eight in township nineteen, range nineteen. That the said defendant has failed and refused to construct a public crossing at said point where the said defendant built its line of railroad across said public road leading from Harrison to Lead Hill and known as the Old Harrison and Lead Hill road on Oregon Flat in Road District No. 7, in Boone County, Arkansas, as required by law. That, by the making of a cut at said point about 150 feet wide and about sixty feet deep, the defendant has obstructed said public road, thereby making it impossible to cross said road at said point. That on February 26, 1906, I. W. Miller, road overseer of said road district No. 7, notified the said defendant as required by law that the said railroad crossing at said point was not constructed as the law required, and notified the said defendant so to construct said crossing within sixty days from the service of said notice. And plaintiff further says that,

notwithstanding said notice, the defendant still fails and refuses to construct a crossing at said point.

"Prayed judgment for $2,000 and $5 per day from the 26th day of April, 1906, until the trial, etc."

The defendant answered and denied the allegations in the complaint.

In the trial of the issues in the action evidence was adduced tending to prove the allegations of the complaint. On the 26th day of February, 1906, when the notice to the defendant was served, defendant's railway where it crosses the public road was not completed, but its trains were running over its railway at that place, and had been in 1905. The cut across the public road made for the railroad was made four feet deeper after the notice was served. The company has constructed a bridge over the cut since the 26th of February, 1906, and the construction of the road is more expensive on account of it, but it can be done.

The court instructed the jury, over the objection of the defendant, in part, as follows:

"2. The court further instructs the jury that you would not be warranted in finding for the plaintiff in any sum unless you find that the defendant railway company failed for sixty days after it had had a reasonable time to complete the construction of its road across the public road after it obstructed said public road for a reasonable time to have had the construction of said road advanced to a state where the said defendant could have constructed a crossing over said public highway with a reasonable expense to said defendant and without unreasonably interfering with the work of constructing said road."

And refused to instruct the jury at the request of defendant as follows:

"If you find from the evidence that I. W. Miller was overseer of the road district in which the crossing in controversy was situated, and that on the 26th day of February, 1906, the time when he is alleged to have served the notice mentioned in the complaint, the defendant was in good faith prosecuting its work of making its railroad at the place mentioned in plaintiff's complaint, and that it had not, at said time, finished its work of construction at said place, you will find for defendant."

The jury returned a verdict for plaintiff for $1,500, and the defendant appealed.

Appellant insists that it had not completed its road at the public crossing at the time the notice was served upon it, but was prosecuting its construction at that place in good faith, and therefore was not subject to the penalties of the statute for failing to comply with it.

The statute provides as follows: "Whenever any railroad company or corporation has constructed, or shall hereafter construct, a railroad across any public road or highway of this State, now established or hereafter to be established, or where any public road or highway hereafter established shall cross any railroad now established or to hereafter be established, such railroad company or corporation shall be required to so construct such railroad crossing, or so alter or construct roadbed of such public road or highway that the approaches to the railroad bed, on either side, shall be made and kept at no greater elevation or depression than one perpendicular foot for every five feet of horizontal distance, such elevation or depression being caused by the construction of said railroad. Provided, at any crossing of any public highway such railroad may be crossed by a good and safe bridge, to be built and maintained in good repair by the railroad company or corporation owning or operating such railroad." Kirby's Digest, § 6681.

Upon the failure of the railroad company to comply with this statute, the road overseer is required to give the company notice of such failure and to require it "to so construct or change the construction of said crossing within the next sixty days that it will conform to the terms of the law." If it fails to do so within the time specified, it is subject to a certain penalty prescribed by the statute. Kirby's Digest, § § 6682-6684.

It is only after the railroad has been constructed across the public road that the statute requires the railroad company to construct its crossing or build a bridge in the manner prescribed. But when is it constructed? The statute does not require the railway to be completed. It seems to us that it is constructed when its track is laid at the crossing and ready for trains to pass over. It is then a railroad. There is no reason why public travel should be obstructed after that time in cases like this. The

bridge can not any more interfere with the further work upon the railroad than its own track or trains. Why should the building of the bridge be postponed when the track is laid and trains were operated over it? The company then enjoys the use and benefits of its road and trains. Should the public under such circumstances suffer delays and inconvenience, and the railroad company be relieved of them? It seems reasonable and just that the building of the bridge by the railroad company over the crossing should not longer be postponed when the track is laid and trains are running at that place. To do so would place it in the power of the railroad company to obstruct travel unnecessarily.

The instruction given over the objection of the defendant was not prejudicial to it, but was more favorable to it than it was entitled to.

Judgment affirmed.